UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

ELENA ALBERTOVNA FEDOROVA,

Debtor.

_____/

Case No. DG 22-02309-swd
Hon. Scott W. Dales
Chapter 13

MEMORANDUM OF DECISION AND ORDER

PRESENT:   HONORABLE SCOTT W. DALES
Chief United States Bankruptcy Judge

On April 15, 2024, p*ro se* Debtor Elena Albertovna Fedorova filed a motion (ECF No. 168, the "Motion") for an order to compel PennyMac Loan Services, LLC ("PennyMac") to meet with her face-to-face. In the Motion, the Debtor challenges PennyMac's status as a creditor and alleges that $3,814.00 in mortgage payments mandated by her chapter 13 plan have "disappeared." She also asserts that an agent of PennyMac visited her property and "tried to hit [Debtor] Fedorova with her car." The Debtor asks the court to compel a face-to-face meeting with a PennyMac representative to answer these allegations.

Rather than schedule oral argument, the court entered an order requiring PennyMac to respond to the contents of the Motion and giving the Debtor time to reply to that response (the "Scheduling Order" ECF No. 169). The court also gave the chapter 13 trustee and the United States Trustee the opportunity to weigh-in if they chose to. The court has received PennyMac's response (including the Affidavit of Jolyn McAllister) (ECF Nos. 175 and 176), the chapter 13 trustee's response (ECF No. 171), and the Debtor's timely reply (ECF No. 177). After reviewing the papers, the court concludes that a formal in-court hearing on these issues is not necessary and will deny the Motion on the papers submitted.

The court has made it clear that it will reject the Debtor's requests "in the nature of discovery" regarding PennyMac's claim unless and until she files a formal claim objection. *See* Order re: Motion for Examination (the "Examination Order"), ECF No. 151; Fed. R. Bankr. P. 9011. The court specifically warned the Debtor in the Examination Order that it would treat future discovery requests unaccompanied by the filing of a formal proceeding as "presented for an improper purpose," and might sanction her, invoking its authority under Rule 9011. In the Scheduling Order, the court gave the Debtor the chance to explain why she is nevertheless entitled to the discovery she seeks despite her history with the court suggesting that she renewed her request for a meeting in bad faith. Finding that she fails to provide a sufficient explanation, the court will deny the Motion as simply another step in her self-destructive and quixotic campaign. Given the unhappy circumstances prompting the Debtor to file her petition, however, the court will refrain from imposing sanctions against her at this time, without prejudice to a future request from an interested party adversely affected by her filings.

Even if the Debtor had made a compelling case as to why the court should put aside its previous instructions, PennyMac and the chapter 13 trustee's responses to the Motion reveal that there is no basis for granting the relief the Debtor requests. Concerning her first basis for requesting a face-to-face meeting with a PennyMac representative, the Debtor cites 24 C.F.R. § 203.604(b) which states that a mortgagor must have a face-to-face meeting with a mortgagee in the event of three or more months of default on a HUD-backed home loan. However, as PennyMac correctly points out in its response, the requirement of a face-to-face meeting is only triggered by the commencement of a foreclosure proceeding. Here, through her plan and with the benefit of the automatic stay, the Debtor is curing the defaults that brought her to bankruptcy and, for now, foreclosure is not in prospect. *See* 24 C.F.R. § 203.500; 11 U.S.C. § 362(a).

The Debtor also claims that a face-to-face meeting with a PennyMac representative is necessary because she contends that $3,814.00 in plan payments are "missing," putting her plan in default and her case in jeopardy of dismissal.  However, both the chapter 13 trustee and PennyMac stated in their responses that there are no missing payments, and that the Debtor is current on her plan through the month of March.  (*See* Trustee's Response 2; PennyMac's Response 3.)  The Debtor's concerns seem more imagined than real, and certainly do not warrant putting the other parties to the expense of a formal hearing -- including PennyMac who would be among the first to raise any default with the court.  The Debtor's insinuation is not colorable.

Through the Motion, the Debtor also alleges that a Jolyn McAllister visited her property to conduct a survey or inspection and that when she began to question Ms. McAllister, Ms. McAllister tried to hit her with her car to escape.  In its response, PennyMac admits that one of its vendors subcontracted with Ms. McAllister to inspect the Debtor's property from the road in accordance with PennyMac's rights under the mortgage, but its response paints a very different picture of the events.  (*See* PennyMac Response 6; Affidavit of Jolyn McAllister at ¶¶ 11-15).  The court, lacking criminal jurisdiction or meaningful investigatory resources, declines to opine on this issue and will leave any such complaints about an alleged assault, either by or against the Debtor, to state and local law enforcement professionals.  The court similarly reserves the Debtor's dark suspicions about criminal activity (involving "Black Knight," PennyMac, "investment banks," "fintech companies," "Chase," Fifth Third Bank, Fiserv, Inc., and others upon whom the Debtor continuously casts aspersions) for law enforcement agencies and the United States Trustee.  The bankruptcy court -- a court of limited jurisdiction -- has a specialized role and does not serve as a forum for private attorneys general.

The court has considered the Debtor's other arguments and finds them without merit in the pending proceeding.

Because the Debtor has failed to heed the court's warnings to this point about her persistent requests for unwarranted judicial intervention -- requests multiplying expenses that PennyMac will likely recover from the Debtor under the loan documents and Rule 3002.1 -- the court renews its warning that it may exercise its prerogative (and duty) to prevent abuse of process by summarily denying any future requests from the Debtor for information or evidence concerning PennyMac's claim outside the confines of a formal claim objection proceeding.  Future unwarranted requests may also invite sanctions.

Moreover, the Debtor's persistently scandalous and defamatory allegations of forgery, fraud, conspiracy, and other criminality against PennyMac and its attorney (or others) will likely prompt the court to exercise its authority under Rule 9011 and 9018 (summarily) to protect these persons and other parties in interest and their counsel from the rants that have so far passed as court filings.  *See* Fed. R. Bankr. P. 9011(c) (authority to impose sanctions with notice) and 9018 (regarding protection against scandalous or defamatory statements with or without notice).

Finally, the court and its trustees cannot continue allocating so much time, attention, and other resources to a single, querulous litigant's reckless and untenable invective and at the same time serve other members of the public responsibly. The court will keep the public's interest in mind while considering the tools at its disposal to address any future abuse of process.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Debtor's Motion (ECF No. 168), including any request to strike filed documents, is DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon the Debtor (via First Class U.S. Mail), PennyMac Loan Services, LLC, the United States Trustee, chapter 13 trustee Brett N. Rodgers, Esq., and all entities requesting notice of these proceedings.

END OF ORDER

**IT IS SO ORDERED.**

**Dated May 10, 2024**



_____
Scott W. Dales
United States Bankruptcy Judge