UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

ELENA ALBERTOVNA FEDOROVA,

      Debtor.

_____/

Case No. 22-02309-swd
Hon. Scott W. Dales
Chapter 13

MEMORANDUM OF DECISION AND ORDER

PRESENT:   HONORABLE SCOTT W. DALES
               Chief United States Bankruptcy Judge

I. INTRODUCTION

*Pro se* chapter 13 debtor Elena Fedorova recently filed several motions (and a flurry of responses to resulting cross-motions) each premised in one way or another on her view that the mortgage creditor she herself identified in her now-confirmed plan[1] is somehow not her lender and, what's more, controls a dark, national, fraudulent scheme involving her home loan. The court has previously rebuffed Ms. Fedorova's similarly fantastic filings largely on procedural grounds and the preclusive effect of her confirmed Plan. Again, and for similar reasons, the court rejects Ms. Fedorova's sinister view of the record.

The court starts by listing Ms. Fedorova's currently-pending motions (some of which more closely resemble responses):

---

[1] The plan her then-counsel filed for her (ECF Nos. 2 and 23, the "Plan"), identifies PennyMac Loan Services, LLC ("PennyMac") as the "creditor" with a mortgage against her home. PennyMac timely filed its Proof of Claim (Claim Reg. No. 5), attaching the usual payment history and loan documents as the rules require. The assignment of mortgage attached to PennyMac's Proof of Claim shows that the original mortgagee (the Mortgage Electronic Registration System as nominee for Perl Mortgage, Inc., and successors) assigned Ms. Fedorova's mortgage to PennyMac. The most recent allonge to the promissory note contains an endorsement in blank, making it a bearer instrument.

1. Debtor's Motion Under FBRP [sic] 3002 to Verify Status of Fedorova's Escrow (ECF No. 215, the "First Motion");[2]

2. Combined Motion to Dismiss PennyMac Loan Services, LLC Response to Fedorova's Motion to Verify Status of her Escrow Account for Failure to Answer, Evasive and Incomplete; Strike Exhibits as Triple Hearsay and for Lack of Foundation; and for the Order Directing PennyMac Loan Services LLC to Provide her the Exact Amount of any "Escrow Deficiency" (ECF No. 219, the "Second Motion");

3. Motion in Opposition to Trustee in Response to Fedorova's Motion for Failure to Answer, Evasive and Incomplete; Lack of Foundation and Hearsay; for the Order Directing Authorized Employee of the Creditor Who Has Personal Knowledge to Appear and Verify All Amounts and to Verify this Court Jurisdiction (ECF No. 222, the "Third Motion");

4. Debtor's Combined Motion to (1) Find Out Where Fedorova Payments Disappeared; (2) Claw Back All Money Paid by Fedorova Up-To-Date and Put It Back on Trustee's Account Until Amounts are Verified by the Creditor (3) Compel Personal Inspection of Original Promissory Note With the Custodian of Records of the Creditor Under R. 1003; and (4) For Adequate Assurance of Performance Under UCC 2-609 (ECF No. 225, the "Fourth Motion");

5. Reply in Opposition to PennyMac Loan Services, LLC dba Townsgate Servicing Response to Fedorova's Combined Motion to Dismiss PennyMac Loan Services, LLC to Fodorova's [sic] Motion to Verify Status of Her Escrow Account; for Failure to

---

[2] The court liberally construed the First Motion as timely under Rule 3002.1(e) but PennyMac Loan Services, LLC's Response to Debtor's Motion Under FBRP [sic] 3002 to Verify Status of Escrow (ECF No. 217) gently and correctly suggests the First Motion is actually an untimely response to PennyMac's Notice of Mortgage Payment Change under Rule 3002.1(b).

Answer; Evasive and Incomplete [sic]; Strike Exhibits as Triple Hearsay and for Lack of Foundation; and for the Order Directing PennyMac Loan Services LLC to Provide Her Exact Amounts of Any "Escrow Deficiency" (ECF No. 266, the "Fifth Motion"); and

6. Motion to Strike Affidavit of Johnny Morton for Lack of Foundation; Lack of Personal Knowledge in Violation of Rule 602; Lack of Evidence; Misrepresentation of Material Facts; False Statements; Hearsay and Violation of Due Process (ECF No. 267, the "Sixth Motion").

Ms. Fedorova's various motions naturally elicited responses from PennyMac (ECF Nos. 217, 240, and 265) and from the chapter 13 trustee, Elizabeth Clark (the "Trustee"). For her part, the Trustee filed her own Motion Under Rule 3002.1(f)(1) to Determine the Status of the Mortgage Claim (ECF No. 229, the "Trustee's Motion").[3]

PennyMac's efforts to give Ms. Fedorova the benefit of her recent property tax exemption (based on her status as a veteran) appears to have backfired by triggering the current exchange of motions and responses and replies, starting with the First Motion which Ms. Fedorova directed mainly at PennyMac's escrow calculation. PennyMac promptly responded with its explanation tracing the original escrow shortfall to Ms. Fedorova's prepetition defaults, giving credit in

---

[3] As an aside and strictly speaking, Rule 3002.1(f)(1) as currently drafted applies only after a debtor completes all payments under the plan, not (as here) when a debtor continues to make plan payments. Rather, the Trustee's Motion anticipates a revision to Rule 3002.1(f)(1) likely to take effect on Dec.1, 2025 (absent Congressional action), which specifically authorizes a trustee or debtor to file a motion to determine the status of the claim, at any time and without awaiting the last plan payment. *See* Supreme Court of the United States, *Proposed Amendments to the Federal Rules of Bankruptcy Procedure* (Apr. 23, 2025) (Proposed revision to Rule 3002.1(f) which provides that "at any time after the date of the order for relief under Chapter 13 . . . the trustee or debtor may file a motion to determine the status of any claim described in (a)."). Because the Trustee's Motion is precisely what the parties needed at this moment in the case, the court will ignore the currently erroneous citation to Rule 3002.1(f)(1). *See* Fed. R. Bankr. P. 9005 (making Fed. R. Civ. P. 61 applicable in bankruptcy cases). For what it is worth, the court welcomes the upcoming rule change as a handy means for addressing occasional post-petition payment controversies in chapter 13, without awaiting final payment.

accordance with the loan documents attached to its Proof of Claim, and arriving at the same accounting reflected in the Trustee's Motion.

After the Trustee filed her motion, the court initially scheduled a hearing, but later perceiving no meaningful factual dispute, pivoted instead to address the seeming controversy through the lens of Rule 56. As that rule requires, the court gave the parties notice that it anticipated ruling in favor of the Trustee, setting a deadline of August 26, 2025, for Ms. Fedorova to file supplemental documentation on the issue.[4]

Having carefully considered Ms. Fedorova's various filings, and the responses from PennyMac and the Trustee, as well as the Trustee's Motion and responses, the court concludes that PennyMac has applied the Trustee's payments to Ms. Fedorova's home loan in accordance with the loan documents supporting PennyMac's Proof of Claim, and that the Trustee has properly accounted for each of Ms. Fedorova's monthly payments under the Plan as of June 30, 2025.

## II. ANALYSIS

In contested matters, like the ones currently before the court in this case, the parties or the court may employ the summary judgment procedure more commonly used in adversary proceedings. *See* Fed. R. Bankr. P. 9014(c) (incorporating Fed. R. Bankr. P. 7056, among other rules, into contested matters). Rule 56, in turn, permits a court to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute," and giving parties an opportunity to respond. Fed. R. Civ. P. 56(f)(3). When a court indicates its intention to grant one party's motion, the court may grant summary judgment *sua sponte* "so long

---

[4] Ms. Fedorova filed her Fifth and Sixth Motions on September 3, 2025 (ECF Nos. 266 & 267) after the August 27, 2025 deadline for supplemental filings. *See* Interim Order (ECF No. 246) (citing Fed. R. Civ. P. 56(f)). Although the court could ignore these submissions as untimely, it has nevertheless reviewed them and finds that they fortify the Trustee's and PennyMac's reconciliation and provide no support for Ms. Fedorova's fanciful view of her case.

as the losing party was on notice that [it] had to come forward with all of [its] evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (in *dicta*); *see, e.g., Ceruti v. Woodhouse (In re Woodhouse)*, Adv. Pro. No. 15-2125, 2022 WL 628456, at *14 (Bankr. D. Utah March 3, 2022) ("where the Court has moved to consider summary judgment on its own under Rule 56(f)(3) in favor of [the defendant], [the plaintiff] must come forward with evidence showing the existence of a genuine dispute regarding her claims.").

The court dissected Ms. Fedorova's motions, trying to separate her scandalous *ad hominem* attacks on PennyMac and its counsel from the conspiracy-laden statements offered to support the attacks. Ms. Fedorova tries to create three factual disputes by contending that: (1) PennyMac miscalculated her post-petition escrow payments following her successful application for a veteran's property tax exemption; (2) PennyMac incorrectly applied her ongoing payments to the loan; and (3) PennyMac lacks standing in the case because it has not proven (to Ms. Fedorova's satisfaction) that it has the right to collect the loan and enforce the mortgage.

The court finds against Ms. Fedorova on all three counts for the following reasons.

*a. Alleged Miscalculation of Escrow Payments.*

Ms. Fedorova has not raised a genuine dispute that PennyMac miscalculated her escrow payments. Indeed, the documents she attaches to her own motions support PennyMac's escrow calculations.

More specifically, Ms. Fedorova argues that her post-petition escrow payments since January 1, 2024, should be $91.75 to account for her veteran's exemption from local property taxes. In Ms. Fedorova's view, her voluminous exhibits somehow show that she nevertheless continues to pay $198.89 each month towards escrow, per PennyMac's original Proof of Claim, but these

same documents actually disprove her allegations.  Ms. Fedorova's exhibits show that her post-petition monthly mortgage payment (including principal, interest, taxes, and insurance), since PennyMac filed its amended Proof of Claim on October 1, 2024, totaled $697.96 per month, with $91.75 going towards the escrow for taxes and insurance.  *See* Third Motion, pp. 20-21.  Additionally, these same exhibits demonstrate that her 2024 post-petition payments (before PennyMac's October 1, 2024 amendment) equaled $736.43 per month, with $130.22 allocable to escrowed items.  *Id.* at pp. 22-38.  Finally, her documentation shows PennyMac refunded $384.70 to the Trustee on November 12, 2024, retroactively giving her the benefit of the veteran's exemption across the entire 2024 tax year -- even for payments she made before learning of the exemption.  *Id.* at p. 19.  PennyMac's accounting aligns *perfectly* with these documents, as well as its Proof of Claim.  *See* PennyMac Loan Services, LLC's Response to Debtor's Motion Under FBRP [sic] 3002 to Verify Status of Escrow, ECF No. 217, ¶¶ 19-23.

Ms. Fedorova also contends that her total escrow payment numbers are inconsistent, due to paying more than $91.75 *in total* towards escrow each month.  Ms. Fedorova's confusion likely stems from her understandable misunderstanding of the chapter 13 payment process. As part of her Plan's provisions to cure the prepetition payment shortfall while maintaining current payments on her residential loan, the Trustee and PennyMac are applying a portion of Ms. Fedorova's payment to cure the prepetition arrearage under § 1322(a)(5), which includes catching up on missed escrow payments.  PennyMac's Proof of Claim, which still enjoys a presumption as to validity and amount, pegged the escrow portion of the arrearage at $4,485.64 as of the petition date.  The monthly statements that PennyMac sends to Ms. Fedorova (and that she attaches in support of her various motions), actually show (after careful parsing) that PennyMac has applied a portion of each payment it receives from the Trustee not just to Ms. Fedorova's current (post-

petition) payment obligations, but also against her prepetition arrears -- including escrow arrears. Ms. Fedorova has supplied no document that suggests that PennyMac has misapplied or misappropriated these "additional payments." Indeed, Ms. Fedorova's paperwork shows PennyMac meticulously applying Ms. Fedorova's payments towards escrow (and other) arrears with each passing month. *See* Third Motion, pp. 18-37. The statements also show the retroactive refund giving Ms. Fedorova full benefit of her veteran's tax exemption.

Because Ms. Fedorova's own exhibits contradict her challenge to PennyMac's claim, the court finds she has not created a genuine dispute about the escrow portion of her payments under the Plan or loan documents. PennyMac and the Trustee have appropriately accounted for the escrow portion of Ms. Fedorova's monthly mortgage payments.

*b. Alleged Misapplication of Post-Petition Mortgage Payments.*

Next, the court rejects Ms. Fedorova's challenge to PennyMac's application of post-petition (non-escrow) monthly mortgage payments. As noted above, Ms. Fedorova's Plan lists PennyMac as the creditor for the loan in question, and PennyMac's timely Proof of Claim calculated Ms. Fedorova's total debt on the loan at $143,803.75 and her prepetition arrears at $27,956.30 (both as of the petition date). It bears repeating: PennyMac's Proof of Claim is presumptively valid under Rule 3001(f), including as to the amount of the claim. *In re Cummings*, 523 B.R. 93, 108 (Bankr. W.D. Mich. 2014) ("When a creditor properly executes and files a proof of claim in accordance with the Federal Rules of Bankruptcy Procedure, the proof of claim constitutes *prima facie* evidence of the validity and amount of the claim.").

The Trustee's Motion, supported by Jodie Francik's solemn declaration under 28 U.S.C. § 1746, indicates that as of June 30, 2025, through the Trustee as disbursing agent, Ms. Fedorova paid $15,019.38 towards her pre-bankruptcy arrears, and $23,029.58 towards her post-petition

continuing mortgage payments.  Trustee's Motion, pp. 1-2.  PennyMac, within its response to the Trustee's Motion, confirmed these numbers, *precisely showing* Ms. Fedorova's post-petition loan mortgage payments at $23,029.58, and payments towards the arrears at $15,019.38.  PennyMac's Response to Trustee's Motion Under Rule 3002.1(f)(1) to Determine the Status of the Mortgage Claim (ECF No. 232), pp. 1-2, 4-6.  Additionally, the exhibits attached to PennyMac's response show that as of July 10, 2025, Ms. Fedorova had a remaining principal balance of $111,147.01. *Id.*, p. 8.

Fedorova's own documentation, instead of creating a dispute, in fact verifies the Trustee's Motion and PennyMac's response.  For example, her documentation shows a remaining principal balance on the loan as of August 12, 2025, of $110,582.13.  Fifth Motion, p. 13.  Her documents, however, also reflect her July payments, which show $564.88 applied to principal.  Fifth Motion, p. 14.  Accounting for her July payments (not included in the earlier-filed PennyMac calculation) brings the principal amount of the loan as of July 8, 2025, to $111,147.01 -- the *exact* remaining principal that PennyMac provided in its response for the same period.  *Compare* Fifth Motion, pp. 13-14, *with* PennyMac's Response to Trustee's Motion Under Rule 3002.1(f)(1) to Determine the Status of the Mortgage Claim (ECF. No. 232), p. 8.  This is not the only example, however, which shows Ms. Fedorova's documentation corroborating the Trustee's (and PennyMac's) position.

Ms. Fedorova paperwork shows that as of May 6, 2025, she paid $14,202.87 towards her arrears.  Third Motion, p. 7.  Additional exhibits further demonstrate that as of August 12, 2025, she paid $16,381.76 towards her arrears.  Fifth Motion, p. 14.  Given the nearly 3-month gap between the figures provided, and Ms. Fedorova's lack of complete timeline, the only thing Ms. Fedorova has proven to the court is that the Trustee's accounting is consistent with the documentation she provided.  In short, Ms. Fedorova's documentation confirms the Trustee's and

PennyMac's accounting.  Therefore, the court finds no genuine factual dispute that PennyMac has applied payments correctly against the loan.

   *c. PennyMac's Status as a Creditor.*

   Finally, Ms. Fedorova continues to argue that PennyMac is not the correct creditor for her loan.  The court has discussed this issue more than a year ago in its Memorandum of Decision and Order dated Feb. 16, 2024 (ECF No. 141), and finds no pressing need to address these continuing allegations, except to note that (1) no other creditor (on this record) is seeking to collect her home loan from her so there is no risk of double-payment; (2) Ms. Fedorova has offered neither evidence nor authority even tending to rebut the presumptions supporting PennyMac's proof of claim; and (3) her persistent suspicion forms part of a multi-year pattern involving not just PennyMac but other lenders, too.

   First, the record contains no suggestion that Ms. Fedorova runs the risk of having to pay twice for her mortgage debt -- once to PennyMac and then to the actual-but-undisclosed holder of the mortgage.  There is no doubt that Ms. Fedorova acquired her home with loan proceeds from the original lender (Perl Mortgage, Inc.), and must repay that obligation.  It stands to reason that if she had been paying the wrong holder of the note all these years (including post-petition through the Trustee), the "real" lender would have appeared by now to collect its due.  The record, of course, contains no evidence supporting Ms. Fedorova's hypothesis.

   Second, Ms. Fedorova's own authorities sprinkled and re-sprinkled throughout her many filings do not support her position.  For example, her reliance on *In re Carrsow-Franklin*, 524 B.R. 33 (Bankr. S.D.N.Y. 2015), actually supports PennyMac's position.  Throughout his opinion, Judge Drain recites not only the presumption of validity under Rule 3001(f), but also the presumption that indorsements on negotiable instrument are authentic.  Judge Drain found under well-settled

Texas law that indorsements on negotiable instruments (such as customary residential promissory notes) are presumed to be authentic. *Carrsow-Franklin*, 524 B.R. at 42-43. Michigan law is to the same effect: unless Ms. Fedorova comes forward with evidence that the signatures on the original note and allonges are forged or otherwise unauthorized, including the most recent endorsement in blank from Caliber Home Loans, Inc., PennyMac is not required to prove that the endorsements are valid. *See* M.C.L. § 440.3308 and official commentary ("The presumption rests upon the fact that in ordinary experience forged or unauthorized signatures are very uncommon, and normally any evidence is within the control of, or more accessible to, the defendant.").

*Carrsow-Franklin* is distinguishable from Ms. Fedorova's case because in that earlier case, with help from a sloppy lender and poorly trained legal team, the chapter 13 debtor rebutted the presumptions with record evidence. In response to that evidentiary showing, the supposed mortgage creditor failed to come forward with evidence of its interest in the note. Here, in contrast, our chapter 13 debtor offers only a random harvest of horribles from the internet and her resulting suspicion.

Third, with respect to that lingering suspicion, Ms. Fedorova's oft-repeated doubts about the identity and scruples of her current home lender echo similar misgivings in prior controversies involving several loan transactions other than the current home loan (including a former home loan regarding a condominium in Illinois, a credit card creditor, credit reporting agencies) and hundreds of other private and governmental entities. The court has identified the following reported decisions after a simple Westlaw Search:

- *Fedorova v. Foley*, No. 1:22-CV-991, 2024 WL 266040, at *1 (W.D. Mich. Jan. 9, 2024), *report and recommendation adopted*, No. 1:22-CV-991, 2024 WL 263007 (W.D. Mich. Jan. 24, 2024) ("Fedorova's 119-page complaint is a collection of allegations against over

100 defendants spread across the country.  The complaint appears to consist of 28 counts, many of which contain multiple claims against multiple defendants.").

- *Fedorova v. Bank of Am., N.A.*, No. 22-CV-3486, 2023 WL 2663563, at *1 (N.D. Ill. Mar. 28, 2023) (159-paragraph complaint listing grievances against Bank of America, N.A., Discover Bank, and twenty-three other defendants for various claims concerning credit cards opened under Fedorova's name and attempts to collect on debt incurred through those lines of credit).

- *Deutsche Bank National Trust Company v. Fedorova*, No. 1–16–1350, 2017 WL 499916, at *1 (Ill. App. 1 Dist., Feb. 6, 2017) ("On appeal, defendant contends that the judgments in her case are void and all orders must be vacated.  Defendant asserts that Deutsche Bank is not the actual plaintiff in this case, her foreclosure was fraudulent and based on forged documents, the relevant assignment of the mortgage was void *ab initio*, she was not properly served, the note was forged, and the circuit court judge violated her civil rights.").

- *Fedorova v. Wells Fargo & Co.*, No. 16 C 1810, 2016 WL 2937447, at *1 (N.D. Ill. May 20, 2016) (various claims involving alleged fraud and violations of federal and state law statutes brought against certain federal Governmental entities and employees and claims brought against certain private entities involved in the foreclosure of her condo in Illinois).

A common theme of suspicion, conspiracies, and frivolous demands to produce information and witnesses emerges, with voluminous entreaties from Ms. Fedorova for court intervention.  This court, the last in a long line of tribunals, may be forgiven for approaching Ms. Fedorova's current storm of motions and responses with healthy skepticism -- a skepticism supported by evidentiary presumptions -- as just another in a series of baseless filings from a

borrower who continues to cry wolf. What makes these latest requests so frustrating is that the bankruptcy process is working as intended to keep Ms. Fedorova in her home through the "cure and maintain" provision of § 1322(a)(5) and the Plan. Moreover, and equally galling: Ms. Fedorova's misguided campaign imposes needless and substantial costs on the professionals, government agencies, and the court, who all serve not just Ms. Fedorova but other debtors and creditors involved in this and other cases.

## III. CONCLUSION AND ORDER

The court has considered Ms. Fedorova's other arguments, including inapt references to the Uniform Commercial Code among other authorities, and finds them lacking in merit. For the reasons listed above, and especially because Ms. Fedorova's own documentation dooms her challenges, the court adopts PennyMac's and the Trustee's payment history, and hopes, perhaps in vain, that today's ruling will free Ms. Fedorova to focus her efforts on performing under her confirmed Plan, rather than undermining it.

If Ms. Fedorova disagrees with the court's assessment of the benefits she is deriving from the bankruptcy process as a chapter 13 debtor, she is free to voluntarily dismiss her case. 11 U.S.C. § 1307(b); *In re Smith*, 999 F.3d 452, 455 (6th Cir. 2021) ("By its plain terms, this provision [11 U.S.C. § 1307(b)] is mandatory: upon the debtor's request, subject to one exception not applicable here (namely that the case was not converted to Chapter 13 from another chapter), the court 'shall dismiss' a Chapter 13 case.").

NOW, THEREFORE, IT IS HEREBY ORDERED that the Trustee's Motion is GRANTED; and all forms of relief requested in Ms. Fedorova's First Motion (ECF No. 215),

Second Motion (ECF No. 219), Third Motion (ECF No. 222), Fourth Motion (ECF No. 225), Fifth

Motion (ECF No. 266), and Sixth Motion (ECF No. 267) are DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of

Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon the Debtor (via First

Class U.S. Mail), PennyMac Loan Services, LLC, the United States Trustee, chapter 13 trustee

Elizabeth Clark, Esq., and all entities requesting notice of these proceedings.

END OF ORDER

**IT IS SO ORDERED.**

**Dated September 9, 2025**



Scott W. Dales
United States Bankruptcy Judge