UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

ELENA ALBERTOVNA FEDOROVA,

        Debtor.

_____/

Case No. 22-02309-swd
Hon. Scott W. Dales
Chapter 13

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                   Chief United States Bankruptcy Judge

I. INTRODUCTION

Elena Albertovna Fedorova (the "Debtor") filed her voluntary chapter 13 petition on November 9, 2022 (ECF No. 1). With the assistance of experienced bankruptcy counsel, she proposed, negotiated, amended, and secured confirmation of a "save the home" chapter 13 plan on February 17, 2023. *See* ECF No. 26. Up to that point, it appeared the case was proceeding smoothly, heading towards the eventual cure of Ms. Fedorova's substantial prepetition mortgage arrears, maintenance of her current home loan payments, a modest dividend to unsecured creditors—all through the offices of a veteran chapter 13 trustee—and discharge after the final plan payment. Yet, appearances can be deceiving, and the halcyon surface of the preconfirmation record in this case disguised very troubled seas churning below.

Almost immediately after confirmation, Ms. Fedorova's counsel withdrew from representation, reporting that her client would not take her advice, advice inconsistent with Ms. Fedorova's view that the mortgage finance industry in general, and PennyMac Loan Services, LLC ("PennyMac") in particular, are awash in fraud, from stem to stern.

After the court relieved counsel of her duties, Ms. Fedorova commenced an unwavering, but procedurally flawed, campaign against PennyMac and its agents, including PennyMac's counsel Cheryl Cook, Esq.  She repeatedly filed documents espousing her view that PennyMac is not entitled to enforce Ms. Fedorova's promissory note and mortgage, or at least that PennyMac has not shown to Ms. Fedorova's satisfaction that it has the right.  After the court overruled her objection to PennyMac's claim and challenge to its lien, explaining that Fed. R. Bankr. P. 3007(b) permits that relief only through an adversary proceeding under Part VII of the Bankruptcy Rules, she renewed her objection in multiple filings (though not through an adversary proceeding), each of which the court rejected.

More specifically, since confirmation, she has insisted on personally inspecting the original note, interrogating various PennyMac employees, conducting Rule 2004 examinations, requesting judicial notice, challenging standing, accounting, reputations, and more.  More recently, she has tried to call into doubt the original funding of the purchase of her residence, perhaps suggesting that she has no obligation to repay the loan.  The court patiently rejected these challenges, giving reasons each time, yet Ms. Fedorova never appealed, evidently content with repeating her arguments rather than reviewing the court's rulings.

Her filing spree, however, came at a cost, not just to the court (whose staff had to accept, scan, docket, route, review, and schedule or summarily dispose of each resulting contested matter), but also to the United States Trustee, chapter 13 trustee, PennyMac and their employees, and other agents who similarly had to respond each time Ms. Fedorova reiterated her grievances.

Even after the court issued its Memorandum of Decision and Order dated September 9, 2025 (ECF No. 268) rejecting Ms. Fedorova's assertions using the summary judgment procedure under Fed. R. Civ. P. 56, she continues to file duplicative motions and other documents accusing

PennyMac, the chapter 13 trustee, and this court of conspiring with others to commit mortgage fraud.  Indeed Ms. Fedorova, despite assurances from the United States Trustee, the chapter 13 trustee, and this court that her chapter 13 bankruptcy is proceeding in the ordinary course, and despite the court's ruling last year that the trustee and PennyMac have appropriately accounted for Ms. Fedorova's plan payments (including prepetition and post-petition principal, interest, and escrow allocation), she continues her campaign, unpersuaded by the efforts of the court and the parties to assure her that she is getting the bankruptcy relief she deserves.  *See* Order to Show Cause (ECF No. 318, the "Show Cause Order") at Appendix A (listing Ms. Fedorova's repetitive filings since the court's Memorandum of Decision and Order dated September 9, 2025); s*ee also* United States Trustee's Response to Court's Order to Show Cause (ECF No. 326, the "UST Response") at Ex. A (similarly listing Ms. Fedorova's duplicative filings reaching back to the Memorandum of Decision and Order dated August 6, 2024).

Previously this court has contemplated whether, but ultimately declined, to sanction Ms. Fedorova even upon request from the United States Trustee.  *See* Memorandum of Decision and Order, dated August 6, 2024 (ECF No. 197) (denying United States Trustee's motion to dismiss). On February 24, 2026, however, the court reached its breaking point after a slew of similar filings from Ms. Fedorova hit the docket, again premised on her distorted and judicially-rejected view of the case.

In order to address the endless stream of filings, the court issued its Show Cause Order directing Ms. Fedorova and other interested parties to explain why the court should not: (1) impose a $250.00 monetary sanction on each duplicative filing from Ms. Fedorova; (2) appoint a guardian *ad litem* or "next friend" for Ms. Fedorova; (3) issue a pre-filing injunction against Ms. Fedorova; or (4) dismiss the case for cause.  *See* Show Cause Order at pp. 5-6.  In response to the Show Cause

Order, the United States Trustee asked the court to consider not merely dismissing Ms. Fedorova's case but also imposing a two-year bar to refiling for relief under Title 11 of the United States Code. *See* UST Response at ¶¶ 9 & 20.  The bar, if imposed as the United States Trustee requests, would likely result in PennyMac's exercising its right to foreclose by making Ms. Fedorova (still in arrears though in an amount greatly reduced since the petition date) ineligible for the automatic stay while PennyMac completes the enforcement measures it began in 2022.

Ms. Fedorova filed several papers in response to the Show Cause Order and the UST Response, each in its own way regurgitating her prior conspiracy theories regarding PennyMac's lack of standing, the court's supposed conflicts and violations of Ms. Fedorova's constitutional rights, its failure to follow distinguishable out-of-circuit appellate authority, and other sundry wrongs.  *See* ECF Nos. 329, 330, and 331.

The court held a hearing on March 12, 2026, in Grand Rapids, Michigan to consider the issues raised in the Show Cause Order.  At the hearing, Ms. Fedorova appeared *pro se*; the chapter 13 trustee appeared in person, and the United States Trustee appeared through counsel.  PennyMac did not appear.

At the hearing, Ms. Fedorova continued to assert her previously rejected arguments and asked the court not to dismiss her case.  The United States Trustee and the chapter 13 trustee both advocated for dismissal with a two-year refiling bar.  After hearing the arguments, the court took the matter under advisement.  Seeing no other effective sanction for Ms. Fedorova's behavior, the court will grant the United States Trustee's request and dismiss the case with a two-year refiling bar, rather than impose the lesser sanctions which he, and the chapter 13 trustee, persuasively argued would not work given the court's prior warnings and the unusual burdens resulting from Ms. Fedorova's approach to her case.

## II. ANALYSIS

As the court noted in the Show Cause Order, while Sixth Circuit precedent encourages courts to impose tempered relief, a court has discretion to determine the appropriate sanctions and may dismiss a case without first resorting to a less severe measure. *Fharmacy Records v. Nasser*, 379 Fed. Appx. 522, 524 (6th Cir. 2010) ("we have instructed courts to look first to an 'alternative sanction [that] would protect the integrity of the [judicial] process,' but we have 'never held that a district court is without power to dismiss a complaint, as the first and only sanction'") (citations omitted). The law, even the law governing sanctions for abuse of process, does not require a court to take meaningless actions.

Due to Ms. Fedorova's conduct, after considering less draconian alternatives, the court is certain that dismissal is the only effective remedy.[1]

First, as the chapter 13 trustee argued during the hearing, the record in this otherwise quotidian chapter 13 case speaks for itself on the question of whether Ms. Fedorova has vexatiously multiplied proceedings and abused the court's process: she has. Putting aside the numerous *ad hominem* attacks on the court—attacks of this ilk which courts increasingly endure these days— the filings have unquestionably burdened the chapter 13 trustee and her staff, the United States Trustee and his, and PennyMac and its employees and other agents, as well. The court is better positioned to handle Ms. Fedorova's outbursts than the parties or their counsel. Counsel cannot risk default by ignoring court filings, including *pro se* filings, and they understandably must defend their reputational interests. With a nod to Abraham Lincoln, "a lawyer's time and advice is her

---

[1] While the United States Trustee and chapter 13 trustee expressed frustration with Ms. Fedorova's continuous emails, which the court also receives despite the prohibition of Fed. R. Bankr. P. 9003, in reaching today's decision the court relies strictly on Ms. Fedorova's filed documents. *See, e.g.*, ECF Nos. 323, 324, and 325. The court intends to stop Ms. Fedorova's abuse of process, not her free speech.

stock in trade," and so is her reputation. The court cannot expect counsel to ignore Ms. Fedorova's combative, personal, scandalous, and ultimately abusive allegations which she makes under the cover of this judicial proceeding. And Ms. Fedorova's general courtesy in the courtroom does not excuse her reckless incivility in her filings. The court must do something.

The first measure the court contemplated, imposing a $250.00 sanction on future frivolous filings by Ms. Fedorova, is unworkable due to Ms. Fedorova's financial circumstances, as the United States Trustee helpfully points out based largely on Schedule J. *See* UST Response, at ¶ 10. Ms. Fedorova and the chapter 13 trustee both agreed that imposing a monetary sanction would cause the former to fall behind on her chapter 13 plan payments. *See* ECF No. 325, at p. 1. Additionally, as the chapter 13 trustee argued with considerable force, the court's imposition of a monetary sanction does not prevent Ms. Fedorova from continuing her filings, it only raises the stakes, allowing the impecunious offender to continue her abuse of the bankruptcy process without meaningful accountability. As a result, the court concurs with the United States Trustee and the panel trustee that imposition of a monetary sanction is an unworkable deterrent to Ms. Fedorova's ongoing misconduct.

Similarly, the court must reject the appointment of a guardian *ad litem* as incompatible with the circumstances of this case. While the court has authority to appoint a guardian *ad litem* or "next friend" under the rules governing infants or incompetents,[2] Ms. Fedorova, the chapter 13 trustee, and the United States Trustee all oppose appointment because, in their view, Ms. Fedorova is not incompetent. *See* UST Response, at ¶ 15; *see also* Fedorova' [sic] Answer and Resistance to the Application for Rule to Show Cause as Unconstitutional and Manifestly Unjust. Request to Compel Adequate Assurance Under UCC Art. 2-608, ECF No. 331, at p. 1.

---

[2] *See, e.g.*, Fed. R. Bankr. P. 1004.1, 1016, and 9014(c) (incorporating Fed. R. Bankr. P. 7017, and therefore Fed. R. Civ. P. 17(c)(2), into contested matters).

Although Ms. Fedorova's filings border on paranoic and she described a high level of stress and anxiety at the hearing, the court cannot say that she suffers from a mental or physical condition which impairs her ability to seek relief. *See* Fed. R. Civ. P. 17(c). Indeed, putting aside the demerits of her filings, she has shown a remarkable ability to research case law and has no difficulty presenting her position in writing or in open court. The court must take care not to mistake self-destructive obstinance for incompetence. Moreover, as the court noted above, Ms. Fedorova's disposable income is limited and the additional costs of appointing a fiduciary only hurt the creditors of this case. It also seems likely that whomever the court appoints would soon join the list of co-conspirators and targets of Ms. Fedorova's filings, making it difficult for the fiduciary to assist her. Put simply, the court finds the costs and invasive nature of appointing a guardian *ad litem* or "next friend" inconsistent with the circumstances, and the possible benefit of such an appointment, illusory.

Finally, a pre-filing injunction would also fail to achieve the court's aim. A pre-filing injunction would allow Ms. Fedorova to continue her onerous behavior while simply shifting the locus of the burden from the parties to the court, at the cost of scarce public resources. And as a practical matter, the court has already tried the equivalent of such an injunction by endeavoring to quickly intercept and deny numerous frivolous motions before putting interested parties to the trouble and expense of responding. This has not worked to stem the tide in the past, and there is no reason to think that the more formalized version— a pre-filing injunction—would succeed in the future. At most, the approach simply reallocates the burden without abating the nuisance. Therefore, while a pre-filing injunction seems like a superficially appealing and less dramatic measure, the court predicts, based on its several years of experience with Ms. Fedorova, that an

injunction would not restrain her in the least.  She and her fellow travelers on the internet[3] have convinced themselves of the rectitude of their position, and she is unable or unwilling to obey the court's contrary rulings rejecting it.

Therefore, the court is left with one unhappy option, dismissing Ms. Fedorova's case.  To start, 11 U.S.C. § 1307(c) permits the court to dismiss a case "for cause," including a lack of good faith, which the court determines on a case-by-case basis.  *Alt v. United States (In re Alt)*, 305 F.3d 413, 418-19 (6th Cir. 2002) ("there is abundant authority for the notion that a bankruptcy court has the power to dismiss a Chapter 13 petition upon a finding that the debtor did not bring it in good faith. … We have also emphasized that good faith is a fact-specific and flexible determination.").  There is every reason to believe that, as a condition of obtaining bankruptcy relief, a debtor must also continue to prosecute the case in good faith.

One must only look at the docket in this otherwise ordinary consumer bankruptcy case to find cause in the form of bad faith, repetitive, and abusive filings.  In response to the court's Show Cause Order, Ms. Fedorova did not express contrition or otherwise offer to conform to the court's rulings; instead, she doubled-down by filling her written responses and oral argument with more of the same fanciful misconceptions.  She is querulous and incorrigible.[4]

Importantly, the Show Cause Order is not the court's first shot across the bow: the court has warned Ms. Fedorova multiple times that her conduct could result in dismissal.  *See, e.g.*, ECF Nos. 151, 178, and 263.  As the chapter 13 trustee stated at last week's hearing, however, the docket speaks for itself on the question of "cause" for dismissal.  Heedless of the court's warnings, Ms. Fedorova continues to disregard adverse rulings and reassert her previously rejected arguments,

---

[3] *See* UST Response, at ¶ 16.
[4] As the court noted in a prior order, the offending behavior predates this bankruptcy filing.  *See* Memorandum of Decision and Order dated September 9, 2025, ECF No. 268, at pp. 10-11 (discussing Ms. Fedorova's various state and federal cases in which she asserts similar claims of fraud).

requiring the court, her creditors and other interested parties to review and respond at great expense, weekly if not daily as they react to Ms. Fedorova's antics. Her presentation at the March 12 hearing epitomizes the obsessive and persistent nature of the problem, as she spent most of the hearing rehashing arguments and did nothing to rebut the United States Trustee's and the chapter 13 trustee's arguments for dismissal. Therefore, with no other avenues and ample cause, the court must dismiss the case.[5]

Finally, in conjunction with dismissal, the court will grant the United States Trustee's and the chapter 13 trustee's request for a two-year bar to refiling. In appropriate circumstances, the court may impose a bar to re-filing greater than 180-days under 11 U.S.C. §§ 105(a) and 349(a). *Cusano v. Klein (In re Cusano)*, 431 B.R. 726, 735 (B.A.P. 6th Cir. 2010) (upholding a two-year bar to re-filing to prevent abuse of the bankruptcy system). Additionally, Ms. Fedorova had notice of the United States Trustee's request for a two-year refiling bar and an opportunity to respond: she addressed the requested relief (albeit in passing) in her pleadings and at the hearing. *See* Motion Requesting to Reschedule Hearing on Order to Show Cause; and for Adequate Time to Respond US Trustee Motion to Dismiss Fedorova's Case and PennyMac Loan Services, LLC's Response to Fedorova's Objection to Legal Fees Pursuant to Constitutional Due Process Rights and Under R 8013(a)3(B) [sic] to Address Matters in Responses (ECF No. 329, the "Adjournment Motion") at p. 1.[6]

The court agrees with the chapter 13 trustee's and United States Trustee's argument that Ms. Fedorova's conduct in this case, and similar prepetition litigation, makes a refiling bar

---

[5] In response to the court's question about conversion as an alternative, the United States Trustee pointed to the absence of non-exempt estate property necessary to support a chapter 7 proceeding.

[6] Ms. Fedorova had ample opportunity to respond to the proposed dismissal and the two-year bar but instead renewed her oft-rejected arguments. Under the circumstances, there is no cause to grant the Adjournment Motion under Fed. R. Bankr. P. 9006(c).

necessary. Without a refiling bar, Ms. Fedorova can quickly re-file a bankruptcy petition as soon as her creditors (whose enforcement rights have been stayed for several years while the current bankruptcy case remained pending) assert their non-bankruptcy remedies. Ms. Fedorova will more than likely bring her creditors, the trustee, the United States Trustee, and this court back into another round of bogus arguments. Standard case management doctrines, such as issue and claim preclusion, and law of the case, without more, have proved no match for Ms. Fedorova's stubborn assertions. Moreover, while this is Ms. Fedorova's first bankruptcy case, she is a prolific litigant and routinely uses both state and federal courts to impose costs on her creditors. *See supra* at n. 4.

Given Ms. Fedorova's proclivity for litigation, it seems likely that she will be able to frustrate her creditors, including PennyMac, through the delays associated with her style of litigation, taking advantage of the indulgence courts generally show for unrepresented litigants and Michigan's generous statutory redemption period. Precluding her eligibility for bankruptcy relief for less than two years would likely permit her to stymie the legitimate collection rights of PennyMac and others. Under the circumstances of this case, a two-year refiling bar is necessary to prevent Ms. Fedorova from continuing to abuse the bankruptcy process.

Although the court does not pretend to understand Ms. Fedorova's recently revealed settlement proposal—some kind of deed in lieu of foreclosure with a leaseback of her residence from the true note holder—nothing in today's order dismissing Ms. Fedorova's case precludes her from negotiating with her creditors, including PennyMac.

### III. CONCLUSION & ORDER

When Ms. Fedorova arrived at the court on the petition date, she was "in over her head," drowning in a sea of mortgage debt. Each time the court and others threw her a lifeline, she refused,

demanding instead to drain the sea. Dismissing the chapter 13 case of a debtor who is current in making plan payments and has made great progress toward curing prepetition payment defaults is anathema, otherwise the court would have granted the United States Trustee's earlier dismissal motion. But a debtor who reaps the benefits of bankruptcy while patently abusing the process offends the court more deeply.

The court's patience has come to an end, and it must dismiss Ms. Fedorova's case (and bar re-refiling) to prevent further abuse.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Adjournment Motion (ECF No. 329) is DENIED for lack of cause, and all other pending motions are DENIED as moot in view of the dismissal.

IT IS FURTHER ORDERED that the chapter 13 case is DISMISSED, the automatic stay is hereby TERMINATED, and the chapter 13 trustee shall file her final report and account.

IT IS FURTHER ORDERED that the Debtor is ineligible for relief under Title 11 of the United States Code and therefore BARRED from filing any future bankruptcy petitions in this district for a period of two-years after entry of this Memorandum of Decision and Order.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon the Debtor (via First Class U.S. Mail), PennyMac Loan Services, LLC, the United States Trustee, chapter 13 trustee Elizabeth Clark, Esq., and all entities requesting notice of these proceedings.

**IT IS SO ORDERED.**

**Dated March 17, 2026**



Scott W. Dales
United States Bankruptcy Judge