UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

ELENA ALBERTOVNA FEDOROVA,

   Debtor.

_____/

Case No. DG 22-02309
Hon. Scott W. Dales
Chapter 13

FINDINGS OF FACT AND CONCLUSIONS OF LAW

PRESENT: HONORABLE SCOTT W. DALES
     Chief United States Bankruptcy Judge

On June 10, 2026, the court conducted an evidentiary hearing to consider the Chapter 13 Standing Trustee's Final Report and Account (ECF No. 358, "the Final Report") after former *pro se* chapter 13 debtor Elena Albertovna Fedorova objected. *See* Fedorova's Objection to Chapter 13 Trustee's Final Report; Demand for Face-to-Face Meeting Under 24 CFR § 203.604 and Evidentiary Hearing with the Accountant Who Has Personal Knowledge Under R. 602. Oral Argument Requested (ECF No. 361, the "Objection").

Before the hearing, the court specified the limited issues it would address at the evidentiary hearing, stating that "the scope of the hearing shall be confined to verifying the Trustee's receipts and disbursements and her compliance with the confirmed plan and the court's orders insofar as they pertain to receipts and disbursements." Order dated May 15, 2026 (ECF No. 365, the "Scheduling Order") at p. 1-2 (citing *In re Kramer*, Case No. 24-1269, 2025 WL 328675, at *3 (6th Cir. Jan. 29, 2025)). The Scheduling Order also required chapter 13 trustee Elizabeth Clark, Esq., (the "Trustee") to persuade the court to approve the Final Report by a preponderance of the evidence, the usual burden of proof in most civil matters. *See* Scheduling Order at p. 2.

At the hearing, the court heard testimony from two witnesses (both in the Trustee's employ) and admitted the Trustee's Exhibits A-V over Ms. Fedorova's objections.  Ms. Fedorova offered neither witnesses nor documentary evidence, but instead made legal arguments generally directed at the application (or alleged misapplication) of payments after the Trustee sent disbursement checks to PennyMac Loan Services, LLC ("PennyMac"), the holder of Ms. Fedorova's residential mortgage debt according to its Proof of Claim (Exh. E).

For the following reasons, the court will overrule the Objection and approve the Final Report.

The Trustee's first witness, Ms. Jodie Francik, has served as a case analyst for the current Trustee since April 2025 (upon the Trustee's appointment), and for approximately 23 years before that under the two predecessor chapter 13 trustees.  Her testimony was straightforward and credible, establishing her expertise and experience.  She explained her duties as a case analyst generally and specifically in connection with Ms. Fedorova's case, including her role in inputting into the Trustee's Satori software system case-specific information about claims and payments from the operative documents, such as the confirmed plan as amended (Exhs. B-D), proofs of claim (e.g., Exh. E), notices of post-petition mortgage payment changes (Exhs. F-H), and notices of postpetition mortgage fees, expenses, and charges (Exhs. I-M).  She also explained her role in generating disbursements to creditors, including PennyMac, using the Satori program, by referencing various business records she generated using the program (Exhs. N-S).

The Trustee's second witness, Mr. Matthew Parker, also testified credibly and carefully about his fourteen years of experience (with this Trustee and her immediate predecessor) in numerous roles, and his education (a bachelor's degree in accounting and business economics from Grand Valley State University).  According to his testimony about his current role, he generates

reports using Satori each month before the Trustee disburses funds and verifies any changes from prior disbursements, for example, based on payment change and mortgage fee notices. He reported that most creditors receive their disbursements through traditional paper checks, and when the check is a disbursement "in bulk" – i.e., representing payment on account of more than one case – he explained that the office generates a voucher that accompanies the check, specifying the case number, debtor, address, purpose of the payment, and last four digits of the account number.

Understandably, both witnesses testified that they have no personal knowledge as to how any particular recipient of the check might apply the funds – a concern Ms. Fedorova has expressed throughout this case. Nevertheless, both witnesses reported that all checks remitted to PennyMac cleared the Trustee's bank account and that PennyMac never complained to them about any missed payments from the Trustee.

The witnesses also explained how the Trustee pays non-mortgage claims in accordance with the Western District's model plan, such as administrative priority claims of Ms. Fedorova's former counsel, the court's filing fee, and the Trustee's own administrative fee (which never exceeded the ten percent threshold specified in 28 U.S.C. § 586(e)(1)(B)).

The testimony of the two witnesses and the figures from the admitted exhibits (especially PennyMac's claim-related exhibits and the confirmed plan) demonstrated perfect accord and persuaded the court that the Trustee has accurately accounted for receipts and disbursements to PennyMac and Ms. Fedorova's other creditors. The Disbursement History for Case (Exh. S) itemizes and sums the payments to Marrs & Terry, PLLC, PennyMac (on several subaccounts), the Clerk of Court (for the filing fee), the Trustee and her predecessor (for the administrative fee), and Ms. Fedorova herself (on account of a modest overpayment of a tax escrow payment as well as funds not distributed to creditors at the time the court dismissed the case).

Against this compelling evidentiary presentation, Ms. Fedorova offers mainly the same arguments against PennyMac that the court previously rejected, either on the merits or for procedural missteps. For example, Ms. Fedorova might have challenged PennyMac's post-petition fees and expenses under Fed. R. Bankr. P. 3002.1, or PennyMac's mortgage lien in an adversary proceeding, but she never did. Challenges to the merits of PennyMac's Proof of Claim ("deemed allowed" under 11 U.S.C. § 502(a)) or post-petition charges in response to the Final Report are beside the point: in making disbursements, the Trustee is entitled to rely on the operative case documents.

One final note regarding Ms. Fedorova's unyielding belief that an entity other than PennyMac has received the mortgage payments that she made during the bankruptcy. Throughout the hearing, whether in each objection to the admission of an exhibit[1] or opening and closing arguments, Ms. Fedorova theorizes that PennyMac Loan *Servicing*, LLC – not the same entity as PennyMac – the Trustee, or even the United States Trustee's trial counsel has misappropriated the payments she remitted to the Trustee during the bankruptcy case. At the risk of responding to this speculation with the court's own speculation, the court infers that Ms. Fedorova's suspicion stems at least in part from the manner in which lenders account for (and apply) payments inside and outside of bankruptcy – a distinction that the term "contractual balance" from Exhibit T suggests.[2]

---

[1] Ms. Fedorova objected to nearly every exhibit claiming the documents constituted "hearsay" and the witness did not establish personal knowledge about their contents. The Trustee, however, offered the exhibits to establish correct disbursements rather than the truth of the contents of the documents. Moreover, many exhibits were subject to judicial notice under Fed. R. Evid. 201 because the fact of the filings (rather than the contents) has a bearing on the dispute. For example, the Trustee did not offer PennyMac's Proof of Claim for the "truth of the matter asserted" within that document, i.e., that the claim accurately reflected Ms. Fedorova's prepetition mortgage arrears. Instead, the Trustee tendered the exhibit to prove she disbursed the correct amount per month to the correct payee in accordance with PennyMac's Proof of Claim, irrespective of its accuracy. Fed. R. Evid. 801(c)(2) (defining "hearsay"). Other rules address the accuracy of the Proof of Claim and PennyMac's secured status, but Ms. Fedorova never properly invoked them during the pendency of her case. *See* Fed. R. Bankr. P. 3007 and 7001(b). Ms. Fedorova's intractable doubts about PennyMac's claim fall outside the scope of a contested matter regarding the Final Report.

[2] One of the principal benefits of chapter 13 relief for homeowners like Ms. Fedorova who fall behind on their mortgage payments before bankruptcy is the opportunity to cure the prepetition mortgage arrears over time, while staying current on mortgage payments during the case. *See* 11 U.S.C. § 1322(b)(5) (cure and maintain provision).

Nevertheless, as the court observed in the Scheduling Order and repeatedly reminded Ms. Fedorova during the hearing, PennyMac's application of Ms. Fedorova's payments is not before the court after dismissal; instead, the court simply endeavored to make sure that the Trustee properly accounted for receipts and disbursements, and she did.

Accordingly, the court will approve the Final Report and overrule the Objection.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Objection (ECF No. 361) is OVERRULED, and the Final Report (ECF No. 358) is APPROVED, and the Clerk shall promptly close the case in accordance with her usual practice.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon the Debtor (via First Class U.S. Mail), PennyMac Loan Services, LLC, the United States Trustee, chapter 13 trustee Elizabeth Clark, Esq., and all entities requesting notice of these proceedings.

END OF ORDER

**IT IS SO ORDERED.**

**Dated June 12, 2026**



Scott W. Dales
United States Bankruptcy Judge

---

Indeed, the Trustee's proofs established that Ms. Fedorova reduced her substantial mortgage arrearage by $19,997.24 during her forty-month tour of bankruptcy, while generally staying current on the ongoing mortgage payments. *See* Exh. S at p. 2. To assist debtors in curing the prepetition arrearage during a chapter 13 case, as an accounting matter, the Trustee bifurcates the mortgagee's claim into prepetition arrears (Exh. 0 at Acct. No. 002-1), the ongoing mortgage payments (*Id.* at Acct. No. 002-0), and post-petition fees (*Id.* at Acct. Nos. 009-0, 010-0, 012-0, and 013-0). The Trustee then applies the monthly payment to each subaccount according to the confirmed plan. Outside bankruptcy, however, lenders are free to apply payments in accordance with their loan documentation and applicable nonbankruptcy law. In the court's experience, lenders generally apply payments to the earliest defaults, making it appear from nonbankruptcy accounting software as if the debtor had not kept current on ongoing monthly payments during the bankruptcy. In Ms. Fedorova's case, the court assumes that after dismissal, PennyMac applied the payments Ms. Fedorova made during her bankruptcy case to the earliest defaults, making it appear that PennyMac is not giving her credit for post-petition payments.